UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HARSH PATEL,

                    Petitioner,

                                                        Case No. 25-cv-709-pp

        v.

MARKWAYNE MULLIN and JOSEPH B. EDLOW,[1]

                    Respondents.

**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS (DKT. NO. 7) AND DISMISSING PETITION FOR WRIT OF *MANDAMUS***

The petitioner, Harsh Patel, is a citizen of India who currently resides in Milwaukee, Wisconsin. Dkt. No. 1 at ¶23. He does not have legal status in the United States. See id. at ¶26; Dkt. No. 9-1 at 3. On May 14, 2025, the petitioner filed the instant petition for a writ of *mandamus* "requesting that the Court to direct [sic] U.S. Department of Homeland Security and U.S. Citizenship & Immigration Services [] to place him on the waiting list in relation to their U Visa or conduct a *bona fide* determination, and issue work

---

[1] The petitioner named as respondents Kristi Noem, then Secretary of the Department of Homeland Security, and Kika Scott, then "Senior Official Performing Duties as Director of U.S. Citizenship & Immigration Services." Dkt. No. 1 at 1. On March 5, 2026, President Trump relieved Kristi Noem as Secretary of Homeland Security; on March 24, 2026, Attorney General Pam Bondi swore in former Senator Markwayne Mullin as Noem's successor. https://www.dhs.gov/topics/secretary-homeland-security. The current director of USCIS is Joseph B. Edlow. https://www.uscis.gov/about-us/organization/leadership. Under Federal Rule of Civil Procedure 25(d), Director Edlow and Secretary Mullin automatically are substituted as the director of USCIS and the Secretary of the Department of Homeland Security.

1

authorization[.]" Dkt. No. 1 at 1. The petitioner alleges that in March 2024, he was robbed at gunpoint in Chicago, Illinois, and that he cooperated with law enforcement. Dkt. No. 1 at ¶¶24-25. He alleges that eight months later, in November of 2024, he filed a Form I-918, Petition for U Nonimmigrant Status ("U visa")—a type of visa available to victims of certain crimes who assist law enforcement.[2] Id. at ¶26. According to the petitioner, despite multiple inquiries, in the six months between the date on which he filed his petition for the visa and the date on which he filed this federal *mandamus* petition, the United States Citizenship and Immigration Services ("USCIS") had not made any decision on his petition for a U visa, nor had he received any communication from USCIS regarding his petition. Dkt. No. 1 at ¶¶28–30.

Two months after the petitioner filed the instant petition, the respondents moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), (3) and (6). Dkt. No. 7. On August 27, 2025, the petitioner responded, dkt. no. 11,[3] and the respondents timely filed their reply brief on September 10, 2025, dkt. no. 12.

The respondents raise several arguments in their motion to dismiss:

---

[2] "The U nonimmigrant status (U visa) is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status.

[3] Under this court's Civil Local Rule 7(b), the petitioner's response brief was due within twenty-one days of service of the respondents' motion—that is, by August 4, 2025—so the petitioner's response was over three weeks late. Dkt. No. 11.

(1) This District is an improper venue because neither Plaintiff nor Defendants reside here for the purposes of 28 U.S.C. § 1391(e); (2) the Court lacks subject-matter jurisdiction over the Plaintiff's claims because Plaintiff seeks relief entrusted to agency discretion, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), and the Court cannot redress his alleged injuries through a favorable judicial decision; and (3) Plaintiff's complaint does not plausibly allege a claim for a writ of mandamus or relief under the Administrative Procedures Act.

Dkt. No. 7 at 2. In their supporting brief, the respondents more specifically assert that "Plaintiff lacks Article III standing because the Court cannot redress the injuries that he alleges, which ultimately center on USCIS's exercise of the discretion specifically delegated to it by Congress." Id. at 3.

## I.     Background

### A.     The U Visa Process

In 2000, Congress passed the Victims of Trafficking Violence Protection Act. Pub. L. No. 106-386, Div. A, 114 Stat. 1464 (2000). That statute created "a new nonimmigrant visa classification that permits immigrants who are victims of serious crimes and who assist law enforcement to apply for and receive a nonimmigrant visa called a U-visa." Calderon-Ramirez v. McCament, 877 F.3d 272, 274 (7th Cir. 2017). To qualify for a U visa, the statute requires a person to show that he has suffered physical or mental abuse as the result of being the victim of specific crimes, that he has information regarding specific crimes, that he has been helpful or is likely to be helpful to law enforcement and that the criminal activity of which he was a victim violated U.S. law or happened in the United States. 8 U.S.C. §1101(a)(15)(U)(i)(I)–(IV). If a person meets those qualifications, he may qualify to stay in the United States for a specified period and to be granted work authorization. 8 U.S.C. §1184(p)(6). But by statute,

3

"[t]he number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section 1101(a)(15)(U) of this title in any fiscal year shall not exceed 10,000." 8 U.S.C. § 1184(p)(2)(A). See also, 8 C.F.R. 214.14(d)(1).

Someone who is eligible for a U visa but has not been granted "U-1 nonimmigrant status" solely because of the 10,000-per-fiscal-year cap must be placed on a waiting list and notified in writing of that placement. 8 C.F.R. §214.14(d)(2). "Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority." Id. The regulation requires that for those placed on the waiting list, in the next fiscal year, USCIS must "issue a number to each petition on the waiting list, in the order of highest priority," assuming that the petitioner remains eligible. Id. While a petitioner is on the waiting list, USCIS "will grant deferred action or parole" to them and their qualifying family members, and "in its discretion," USCIS may authorize employment for the petitioners and their qualifying family members. Id. And while someone who was granted deferred action or parole is on the waiting list, "no accrual of unlawful presence under section 212(a)(9)(B) of the INA, 8 U.S.C. 1182(a)(9)(B), will result." 8 C.F.R. §214.14(d)(3). But, "a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS." Id. at §214.14(d)(3).

The respondents explain that USCIS receives far more than 10,000 U visa petitions per year. Dkt. No. 8 at 5 n.3. That results in a waiting list

4

backlog. To address that backlog, Congress has granted the Secretary of the Department of Homeland Security discretion to "grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. §1184(p)(6). This is called the "Bona Fide Determination (BFD) process." USCIS Policy Manual, Volume 3, Chapter 5 (available at https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5). Under the BFD process, USCIS determines whether a pending U visa petition is "bona fide" (which means that the petition must be properly filed and must include all required documentation, and that USCIS must have received the results of the petitioner's background and security checks) and "whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion." Id. Once this process is complete, "USCIS then determines whether to exercise its discretion to issue a [Bona Fide Determination] EAD [Employment Authorization Document] and grant deferred action to the petitioner." Id.

A person who has applied for a U visa may receive the benefits of being an applicant either by holding his place in line on the waiting list or by going through the *bona fide* determination process. But he likely can't do both: "USCIS generally does not conduct waiting list adjudications for aliens who USCIS grants BFD EADs and deferred action to; these petitioners' next adjudicative step is final adjudication when space is available under the statutory cap." Id.

B.    The Petition (Dkt. No. 1)

The petitioner seeks various forms of relief. The introductory paragraph of the petition asks the court "to direct U.S. Department of Homeland Security and U.S. Citizenship & Immigration Services (hereinafter 'USCIS') to place [the petitioner] on the waiting list in relation to their[4] U Visa or conduct a bona fide determination, and issue work authorization . . . ." Dkt. No. 1 at 1. The first numbered paragraph of the petition states that the petitioner brought this action "to compel the Defendants to act on the petition for U nonimmigrant status filed by Plaintiff with USCIS on or about November 2024." Id. at ¶1. At the end of the petition, the petitioner asks the court to "[a]ssume jurisdiction herein," to "[c]ompel the Defendants and those acting under them to perform their duty or duties to determine Plaintiff's eligibility for placement on the U Visa waiting list, or alternatively compel the Defendants to determine Plaintiff's eligibility by making a Bona Fide Determination" and to "[g]rant their[5] applications for work authorizations." Id. at 9.

With regard to jurisdiction, the petitioner asserts that this court has subject-matter jurisdiction under 28 U.S.C. §1331 (the federal question subject-matter jurisdiction statute), 28 U.S.C. §1361 (the federal *mandamus* statute), 5 U.S.C. §555(b) and 5 U.S.C. §702 (the Administrative Procedure Act)

---

[4] The court assumes that by "their," the petitioner means himself.

[5] The court assumes that in referencing "their" applications, the petitioner means *his* application.

6

and Title 8 of the United States Code (which covers "Aliens and Nationality"). Id. at ¶¶2-6.

Regarding venue, the petitioner asserts that venue is proper in the Eastern District of Wisconsin because "[t]he Defendants maintain offices in this district and Plaintiff resides in Milwaukee, Wisconsin, which is within the judicial district of the Eastern District of Wisconsin." Id. at ¶7.

The petitioner asserts that although he filed his U visa petition in November 2024, was assigned a receipt number, and has inquired multiple times about the status of the petition and his request for work authorization, "[t]o date, USCIS has still not made a decision on the petition for U nonimmigrant status." Id. at ¶¶26-29. The petitioner says that he wants to either be put on the deferred action waiting list or to be given a *bona fide* determination, "so that he may obtain work authorization." Id. at ¶31.

The petitioner alleges that "[t]he language of the statute and [the accompanying] regulations are mandatory, not discretionary, and requires the Defendants to adjudicate the petitions for U nonimmigrant status, even prior to visa availability." Id. at ¶22. The petitioner cites several examples of "duties owed by USCIS in the petition for U nonimmigrant status process." Id. at ¶16. He contends that "U.S.C. section 1184 states that '[t]he Attorney General *shall* consider any credible evidence relevant to the petition.'" Id. (emphasis by the petitioner). He asserts that 8 C.F.R. §214.14(c)(4) and (5) provide "that USCIS '*shall* conduct a de novo review of all evidence submitted,' and, most importantly, after that review 'USCIS *will issue* a written decision....and notify

7

the petitioner of the decision.'" Id. (emphasis by the petitioner). He argues that 8 C.F.R. §214.14(d)(2) states that "USCIS *will grant* deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list." Id. at ¶17 (emphasis by the petitioner).

The petitioner asserts that the respondents' delay is "unreasonable per se," "unreasonable in light of [the petitioner's] status as a crime victim," "unreasonable in light of the fact that Defendants' inaction in promulgating regulations . . . has helped created the current backlog of U visas" and "unreasonable in light of the fact that USCIS has been unable to adequately respond" to his inquiries. Id. at ¶¶38–41. Throughout his petition, the petitioner contends that the respondents' delay has prevented him from obtaining work authorization. Id. at 1 at ¶¶28, 31, 43. He asks the court to "grant their[6] applications for work authorization." Id. at 9.

## II. Motion to Dismiss (Dkt. No. 7)

### A. The Tardiness of the Petitioner's Response Brief

As noted, the petitioner filed his brief in opposition to the respondents' motion to dismiss over three weeks late. In their reply brief, the respondents emphasize this, and argue that "[t]he Court may disregard Plaintiff's response, given its unexcused and unexplained tardiness." Dkt. No. 12 at 1 n.1 (citing cases). The respondents are correct; Civil Local Rule 7(d) (E.D. Wis.) states that "[f]ailure to comply with the briefing requirements in Civil L.R. 7(a)-(b) may

---

[6] The petitioner asks the court to grant "their applications"—plural—but the court is aware of only one petitioner and only one application.

result in sanctions up to and including the Court denying or granting the motion." And General L.R. 83(f) allows the court to "impose appropriate sanctions on any party or attorney who fails to comply with a Local Rule."

The petitioner does not explain why he did not seek additional time to file his opposition brief; he has not even acknowledged that he filed it late. The court understands that the petitioner's counsel is located in the Northern District of Illinois, and that rather than setting a standard briefing schedule for all motions, that district's Local Rule 78.3 allows each judge to set his or her own briefing schedule. But by the court's count, counsel has filed seven cases in this district in the past three years. If counsel plans to practice in this district with regularity, she should familiarize herself with this court's local rules. General L.R. 1 says that "[c]ompliance with the rules is expected."

That said, it is up to the court whether to impose sanctions for failure to comply with the rules. In fact, the rules discourage counsel from filing motions for sanctions based solely on a party's failure to comply with the local rules (General L.R. 1 and 83(f)) and the respondents wisely have not filed such a motion. They merely point out, in a footnote, that the court has the authority to disregard the petitioner's opposition brief. Although the court agrees that it has that authority, it will not exercise it. The court has considered the petitioner's arguments.

B.     The Structure of the Parties' Briefing

As the court stated above, the respondents' motion listed three grounds for dismissal, in the following order: (1) improper venue; (2) lack of subject-

9

matter jurisdiction (both because "Plaintiff seeks relief entrusted to agency discretion, *see* 8 U.S.C. § 1252(a)(2)(B)(ii)"—a challenge to the court's statutory jurisdiction—and because "the Court cannot redress his alleged injuries through a favorable judicial decision"—a challenge to the court's constitutional jurisdiction); and (3) failure to state a claim under the Mandamus Act or the APA. Dkt. No. 7 at 2. In their supporting brief, the respondents presented the venue issue first. Dkt. No. 8 at 8-14. Next, they argued that the court lacks subject-matter jurisdiction. Id. at 14-21. They broke this issue down into two sub-issues, arguing first that the Administrative Procedure Act does not authorize the court to compel action by USCIS, id. at 14-19, and second the "more fundamental problem" that the petitioner allegedly does not have Article III standing because "the Court lacks the power to redress his alleged injury," id. at 19. Finally, the respondents asserted that "[e]ven on the merits," the court should dismiss the petition under Fed. R. Civ. P. 12(b)(6) because it fails to state a plausible claim for *mandamus* relief. Id. at 22-30.

The petitioner responded that the court has jurisdiction under the Mandamus Act and the Administrative Procedure Act. Dkt. No. 11 at 2-6. The petitioner did not mention Article III, or standing, or respond to the respondents' assertion that this court lacks the power to redress the injury he alleges. The petitioner next turned to the respondents' assertion that venue is not proper in the Eastern District of Wisconsin, id. at 6-9, and concluded by addressing the respondents' Rule 12(b)(6) arguments, id. at 9-13.

10

In their reply, the respondents again began by arguing that venue is improper and again relegated their subject-matter jurisdiction argument to second place. See Dkt. No. 12. They concluded with their Rule 12(b)(6) arguments. Id.

The question of whether a federal court has subject-matter jurisdiction is "a threshold matter." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). That is because subject-matter jurisdiction involves a federal "court's power to hear a case." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). If a "federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Id.

The second sub-issue the respondents raise in their challenge to subject-matter jurisdiction—Article III standing—is a critical element of federal jurisdiction; "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" Warth v. Seldin, 422 U.S. 490, 499 (1975) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)). See also Steel Co., 523 U.S. at 101-02 ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); Moore v. Wells Fargo Bank, N.A., 908 F.3d 1050, 1057 (7th Cir. 2018) ("Standing is an element of subject-matter jurisdiction in a federal civil action, so we address that issue first.").

11

Because subject-matter jurisdiction, including whether the petitioner has Article III standing, is a threshold issue, the court will address it first.

### C. Subject-Matter Jurisdiction

The respondents cite Fed. R. Civ. P. 12(b)(1), which allows a party to assert by motion the defense of lack of subject-matter jurisdiction. Dkt. No. 8 at 8. A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the pleading. Bultasa Buddhist Temple of Chi. v. Nielsen, 878 F.3d 570, 573 (7th Cir. 2017).

> This [Rule 12(b)(1) subject-matter jurisdiction] defense can take the form of a facial or a factual attack on the plaintiff's allegations. *See Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist. *See id.* In this way, a facial attack does not challenge the alleged facts themselves. But a factual attack does, testing the existence of jurisdictional facts underlying the allegations. *See id.* at 444. Accordingly, a plaintiff undergoing only a facial attack enjoys treatment of her allegations as true, but that benefit does not carry into the context of a factual challenge. *See id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In that context, the court may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action. *See Venezuela v. Helmerich & Payne Int'l Drilling Co.*, ___ U.S. ___, 137 S. Ct. 1312, 1316 (2017); *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019).

Bazile v. Finance System of Green Bay, Inc., 983 F.3d 274, 279 (7th Cir. 2020).

Although the respondents emphasize the paucity of the petitioner's factual allegations, they have not challenged the truth of those facts. The court infers that the respondents intended to argue that even assuming everything the petitioner alleges is true, the court does not have jurisdiction under the relevant statutes and the petitioner does not have standing to raise his claims

12

in federal court. The court concludes that the respondents have raised facial challenges to the petitioner's allegations, so the court will "accept the well-pleaded facts as true and draw all reasonable inferences in [the petitioner's] favor." Choice v. Kohn Law Firm, S.C., 77 F.4th 636, 638 (7th Cir. 2023).

"Under Article III of the Constitution, plaintiffs must have a 'personal stake' in a case to have standing to sue." Bost v. Ill. State Bd. of Elections, ___ U.S. ___, 146 S. Ct. 513, 519 (2026) (citing FDA v. Alliance for Hippocratic Medicine, 602 U.S. 367, 379, (2024)). "They must, in other words, be able to answer a basic question: 'What's it to you?'" Id. (quoting (A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). To show a personal stake in the case, the party asserting federal jurisdiction must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Fox v. Dakkota Integrated Sys., LLC, 980 F.3d 1146, 1151 (7th Cir. 2020) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016)). Here, the petitioner, as the party invoking federal jurisdiction, "bears the burden of establishing these elements." Lujan, 504 U.S. at 561 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1999) and Warth, 422 U.S. at 509).

The respondents focus on the third element of Article III standing—redressability. "Redressability examines the causal connection between the alleged injury and the judicial relief requested." Lac De Flambeau Band of Lake Superior Chippewa Indians v. Norton, 422 F.3d 490, 501 (7th Cir. 2005). "The

13

plaintiff must show a substantial likelihood that the requested relief will remedy *the alleged injury in fact*." Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 287 (2008) (citation modified) (emphasis in original) (quoting Vermont Agency of Nat. Res. v. U.S. *ex rel.* Stevens, 529 U.S. 765, 771 (2000)); see Steel Co., 523 U.S. at 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan, 504 U.S. at 561 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976)).

In June 2025, the Supreme Court explained that

[t]he second and third requirements, causation and redressability, are usually "flip sides of the same coin." *Alliance for Hippocratic Medicine*, 602 U.S., at 380 . . . . Causation requires the plaintiff to show "that the injury was likely caused by the defendant," and redressability requires the plaintiff to demonstrate "that the injury would likely be redressed by judicial relief." *TransUnion* [*LLC v. Ramirez*], 594 U.S. [413], at 423 [(2021)] . . . . "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Alliance for Hippocratic Medicine*, 602 U.S. at 381 . . . . To be sure, redressability "can still pose an independent bar in some cases," but "the two key questions in most standing disputes are injury in fact and causation." *Id.*, at 381, and n.1 . . . . The additional redressability requirement generally serves to ensure that there is a sufficient "relationship between the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 . . . (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753, n.19 . . . (1984)); see *Haaland v. Brackeen*, 599 U.S. 255, 292-293 . . . (2023).

Importantly, if a plaintiff is "an object of the action (or forgone action) at issue," then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan,* 504 U.S. at 561-562. . . .

14

Diamond Alternative Energy, LLC v. Environmental Protection Agency, 606 U.S. 100, 111-12 (2025).

Finally, in considering redressability, the Supreme Court has emphasized that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." Steel Co., 523 U.S. at 89. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." Id. (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974)). The Supreme Court has held that "uncertainty about whether a cause of action exist[s]" is not "an Article III 'redressability' question." Id. at 96 (discussing Bell v. Hood, 327 U.S. 678 (1946)). The pertinent question in determining redressability is whether the relief the petitioner is requesting would remedy the injury he alleges. See id.

The respondents characterize the petitioner's alleged harm as "the inability to work legally in the United States." Dkt. No. 8 at 20. They characterize the remedy he seeks as "a judicial order directing USCIS to make a [*bona fide* determination] or decide whether to place Plaintiff on the U Visa waiting list." Id. They reason that even if the court were to issue the order the petitioner requests, it would be up to USCIS, in its discretion, to decide whether to allow the petitioner to work legally in the United States (either by granting his U visa petition or by giving him an employment authorization

15

document). Id. The respondents concede that the court could order the defendants to make a *bona fide* determination, and that in following that order, the USCIS might decide that the petitioner's U Visa petition is *bona fide*, but they argue that even then, USCIS would not be required to grant the petitioner an employment authorization document. Id. at 20-21. The respondents contend that "[i]t is not enough for Article III standing that the relief awarded by the court could potentially lead to alleviation of the harm of which the petitioner complains—'it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 21 (citing Lujan, 504 U.S. at 561. They also cite several decisions from district judges in the Northern District of Illinois, all of which concluded that the petitioners' claims were not redressable.

Taking the respondents' reliance on the Northern District of Illinois cases first: Although a federal district judge's decision is not binding precedent on another district judge, see Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011), a fellow judge's reasoning may be persuasive. The cases the respondents cite, and others from the Northern District of Illinois, predate the Supreme Court's decisions in Diamond Alternative Energy and Gutierrez. Perhaps more relevant, it appears that in some of those cases, the factual circumstances were different from those in this case; in others, the relief requested was different.

In Zala v. Mayorkas, Case No. 23 C 17034, 2024 WL 5465730 (N.D. Ill. July 17, 2024), for example—a case in which the petitioners asked the court to compel the respondents to "complete the processing and final adjudication of

16

Plaintiffs' and their family members' [EAD Applications]"—the district court pointed out that one petitioner's employment authorization application had been approved before the suit was filed and for the other petitioner, "the adjudication of his EAD Application has no bearing on whether he will be subject to removal proceedings and compelling Defendants to immediately adjudicate his EAD Application will result in the application's denial." Id. at *2. The court disposed of the second petitioner's argument by stating only that the petitioner had cited no law "requiring Defendants to adjudicate EAD Applications when USCIS has not determined that there is a bona fide U-visa application pending." Id. In contrast, the petitioner in the case before this court has a U Visa application pending. Dkt. No. 1 at ¶¶26-30.

Some five months later, in December of 2024, another judge in the Northern District of Illinois dismissed a case in which twelve petitioners had sued under the APA and the Mandamus Act, asking the court to compel the respondents to "adjudicate their [Employment Authorization Documents]." Chaudhari v. Mayorkas, Case No. 24-CV-6893, 2024 WL 5465720, at *1 (N.D. Ill. Dec. 16, 2024). The petitioners agreed with the respondents that "their alleged injury [was] an 'inability to work due to lack of EAD,'" but they argued that the simple act of adjudication of their employment authorization documents constituted redress. Id. at *2. The court dismissed the petition for lack of redressability. Id. at *2. The court explained that the petitioners' argument

> fails to meaningfully explain how adjudication of their applications would be *likely* to result in their ability to work. Relatedly, it also

17

does not meaningfully grapple with the defendants' position that an order compelling adjudication would result in a denial of [Employment Authorization Documents] because the plaintiffs will not be eligible until their applications are determined to be *bona fide* or until they are placed on the waitlist. While allegations that adjudication potentially may lead to EADs means that it is *conceivable* that the plaintiffs' harm will be redressed, such is insufficient. Absent allegations sufficient to support an inference that USCIS is likely to grant the plaintiffs EADs upon an order compelling adjudication, the plaintiffs have failed to establish redressability.

Id. Here, the petitioner has requested different relief—rather than asking for adjudication of his Employment Authorization Documents (or perhaps in addition to making that request), he has asked the court either to compel the respondents to put him on the waitlist or to compel them to make a *bona fide* determination. Dkt. No. 1 at ¶31.

The respondents also cite Romero v. Scott, Case No. 24-CV-4372, 2025 WL 815071, at *1 (N.D. Ill. Mar. 12, 2025). The petitioner in Romero brought his claims under the APA and the Mandamus Act, although it is not clear what specific relief he requested. Like the petitioner here, the petitioner in Romero did not address the respondent's redressability argument. Id. at *3. Like the judge in Chauhari, the judge in Romero concluded that "[a]n order compelling an adjudication is not likely to result in Romero's eligibility for work authorization unless and until his application is determined to be bona fide or he is waitlisted." Id. The Romero court found that the petitioner's injury was not redressable and that he did not have standing. Id.

Finally, on March 31, 2025, a judge in the Northern District decided Renteria v. Scott, Case No. 23 C 16855 , 2025 WL 1008077, (N.D. Ill. March

31, 2025). The <u>Renteria</u> court adopted the reasoning employed by the judges in the other three cases, concluding that "an order compelling USCIS to adjudicate Plaintiffs' U visa applications *could* result in the ultimate granting of EADs and deferred action, but alleging harm that *could* be redressed is insufficient to demonstrate standing." <u>Id.</u> at 2.

These cases are well-reasoned and helpful. But this court must determine whether the injury *this* petitioner claims to have suffered is redressable by the relief *this* petitioner seeks. To make that determination, the court assesses this petitioner's standing one element at a time. The court first must ascertain what injury the petitioner alleges he has suffered. The *respondent* says that the petitioner's injury is his inability to work in the United States. The petition itself is less clear. Most of the petition discusses the operation of the network of statutes and regulations that governs the U Visa process. <u>See</u> Dkt. No. 1 at ¶¶11-22. It then asserts that the petitioner filed his petition for a U Visa in November 2024. <u>Id.</u> at ¶26. The petitioner filed this federal *mandamus* petition six months later, in May 2025; the petitioner alleges that by that point, he had asked multiple times about the status of the petition and of his application for work documentation but had received no response. <u>Id.</u> at ¶28. But the closest the petitioner comes to asserting an *injury* is when he asserts that "[b]y delaying adjudication of his petition for U nonimmigrant status, USCIS has deprived Plaintiff of the opportunity of work authorization." Dkt. No. 1 at ¶43. Relying on that assertion, the court concludes that the

19

injury the petitioner has alleged is the denial of an opportunity to obtain work authorization from USCIS.

Assuming for the sake of argument that denial of an opportunity is a concrete and identifiable injury, the court next asks whether the petition alleges that the respondents caused that injury. The petitioner is clear on that: he asserts that the defendants have a duty to adjudicate his U Visa petition and that they unreasonably have failed to perform that duty and have failed to give him information on what (if anything) he needs to do to get the process of performing that duty moving. Dkt. No. 1 at ¶¶30, 37.

That brings the court to the question of whether the petitioner's injury—the denial of an opportunity to obtain work authorization from USCIS—is likely to be redressed by a favorable decision from this court. To answer that question, the court must determine what the petitioner is asking the court to do. The petition provides more than one answer to that question. First, the petitioner asks the court to issue an order directing the defendants "to place him on the waiting list in relation to [his] U Visa or conduct a bona fide determination, and issue a work authorization." Dkt. No. 1 at 1. If the court were to issue such an order, would the order likely redress the respondents' alleged denial of the petitioner's opportunity to obtain work authorization from USCIS? The answer is yes. If the petitioner is not on the waitlist, he is less likely to have an *opportunity* to obtain work authorization. If he has not been afforded a *bona fide* determination, he is less likely to have an *opportunity* to obtain work authorization. Put the other way, the petitioner is more likely to

20

have an opportunity to obtain a work authorization if he's either on the wait list or afforded a *bona fide* determination.

Second, the petitioner asks the court to "[c]ompel the Defendants and those acting under them to perform their duty or duties to determine Plaintiff's eligibility for placement on the U Visa waiting list, or alternatively to compel the Defendants to determine Plaintiff's eligibility by making a Bona Fide Determination." Id. at 9. Rather than asking the court to order that he be put on the waiting list, the petitioner asks the court to order the respondents to "perform their duties" to "determine his eligibility for placement" on the waiting list. If the court issued an order requiring the respondents to perform their duties (either their duty to decide whether the petitioner is eligible for placement on the waitlist or their duty to make a *bona fide* determination), would such an order redress the respondents' alleged denial of the petitioner's opportunity to obtain work authorization from USCIS? Again, it appears that the answer is yes. The petitioner would have, at least, an *opportunity* to obtain work authorization if the respondents complied with the court's order and performed one of those duties.

But as the Northern District of Illinois courts have explained, "likelihood" that a court order would redress the injury is not enough. The Supreme Court has said multiple times that the party asserting jurisdiction must show a "substantial likelihood" that "victory in [the] suit" would result in redress. See Simon, 426 U.S. at 45; Stevens, 529 U.S. at 771; Sprint Commc'ns, 554 U.S. at 287. It is the "substantial likelihood of redress" requirement that convinced the

21

judges in the Northern District of Illinois cases to conclude that the petitioners in those cases had no standing. Those courts concluded that because it is entirely within the respondents' discretion whether to issue employment authorization documents and make *bona fide* determinations, petitioners cannot show a *substantial* likelihood that if a court ordered the respondents to adjudicate U Visa applications, the petitioners would obtain either employment authorization documents or *bona fide* determinations.

Here, as explained above, it appears that the petitioner's alleged injury is slightly different than those alleged in the Northern District of Illinois cases; it is the denial of the *opportunity* to obtain employment authorization documents or a *bona fide* determination. So this court's analysis is a bit different from the analyses in which the Northern District courts engaged. This court must determine whether the petitioner has shown that there is a substantial likelihood that if the court orders the respondents to determine whether the petitioner is eligible to be put on the waitlist or to conduct a *bona fide* determination, he will get the *opportunity* to obtain work authorization.

Although one could imagine circumstances under which such an order would be substantially likely to give the petitioner an opportunity to obtain work authorization, the petitioner has fallen well short of carrying his burden to make that showing. The Supreme Court has instructed that "there surely is a starting presumption that when jurisdiction is conferred, a court may not decline to exercise it." Union Pacific R.R. Co. v. Bhd. of Locomotive Eng'rs and Trainmen Gen. Committee of Adjustment, Cent. Region, 558 U.S. 67, 71

22

(2009). But the Court also has held that "[i]t is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11 . . . (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 . . . (1936)." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

The petitioner's response brief does not discuss Article III standing at all. The petitioner has made *no* showing regarding redressability, or standing, or Article III jurisdiction. This failure dooms his petition; starting from a presumption that the cause lies outside this court's jurisdiction, the petitioner has not met his burden of persuading the court that whatever injury he claims to have suffered is *substantially* likely to be redressable by the order he appears to be asking this court to issue.

Third, at the very end of the petition, the petitioner asks the court to "[g]rant their [presumably his] applications for work authorization." Dkt. No. 1 at 9. This is exactly the type of injury that the Northern District of Illinois courts found was not redressable. The petitioner has cited no statute or regulation giving this federal court the authority to grant U visa applications for work authorizations.

Because the petitioner has not persuaded the court that he has standing, the court finds that it lacks subject-matter jurisdiction.

## D. Other Arguments

As the court has observed, "[o]rdinarily, a court cannot issue a ruling on the merits 'when it has no jurisdiction' because 'to do so is, by very definition, for a court to act ultra vires.'" Brownback v. King, 592 U.S. 209, 218 (2021) (quoting Steel Co., 523 U.S., at 101-02). The court's conclusion that it does not have subject-matter jurisdiction dictates that it cannot decide the merits of the defendants' other arguments, but the court would be remiss it if did not identify (without resolving) some additional problems with the petitioner's requests.

The respondents' first argument is that venue is not proper in the Eastern District of Wisconsin and that the court should dismiss for that reason. The applicable venue statute is 28 U.S.C. §1391(e) because the respondents are officers/employees of the United States. That statute provides for venue in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides if no real property is involved in the action." The respondents do not reside in the Eastern District, so subsection (A) does not apply. The parties disagree about whether the petitioner "resides" in the Eastern District; the respondents cite cases (none from the Seventh Circuit) holding that someone who is not legally in the country cannot "reside" in one of its judicial districts. The court will not opine on that issue, or on whether subsection (C) applies. But it observes that the petitioner's argument regarding subsection (B)—whether a "substantial part" of the events giving rise to the

24

*mandamus* petition occurred in the Eastern District—is questionable. He asserts that he was required to appear in Milwaukee for "biometrics." Dkt. No. 11 at 8. As the respondents point out, the petitioner did not allege this fact in the petition, so it is difficult to see how it could be a "substantial part" of the events that gave rise to his claim. Had he alleged that fact in the petition, it is difficult to see how being required to appear for a couple of hours to be fingerprinted and photographed constitutes a "substantial part" of the USCIS's alleged unreasonable delay in either processing the petitioner's application to get him on the waitlist or conducing a *bona fide* determination.

Even if this court had jurisdiction (constitutional and statutory) and even if venue were proper, there is Seventh Circuit precedent that does not seem propitious for the merits of the petitioner's claim. The petitioner in <u>Calderon-Ramirez v. McCament</u>, 877 F.3d 272 (7th Cir. 2017) (a case that the petitioner himself cites) had been waiting for a USCIS decision on his U visa petition for about two years. <u>Id.</u> at 275. The Seventh Circuit acknowledged the "significant backlog of U-visa applications," and said that against that backdrop, it must "determine whether [the petitioner] has a right to skip ahead of other petitioners who filed an application before [the petitioner], but who are also waiting for adjudication for the U-visa waiting list." <u>Id.</u> The court concluded that the petitioner had not demonstrated that his wait time was any more unreasonable than that of other petitioners "waiting in the same line," and that under the Administrative Procedure Act, the petitioner's wait time was not

25

unreasonable "[d]ue to the circumstances USCIS faces and the agency's recent changes to alleviate the backlog." Id. at 275-76.

As of the date on which he filed his *mandamus* petition (May 14, 2025), approximately six months had passed since the petitioner had filed his petition for a U visa. As of the date of this order, approximately sixteen months have passed since he filed his U visa petition. The court's decision in Calderon-Ramirez implies that, without more, the petitioner has not established unreasonable delay.

The petitioner argues that it would not be proper for the court to decide the reasonableness of the delay at the pleadings stage, citing Telecomms. Research & Action v. FCC, 750 F.2d 70 (D.C. Cir. 1984) and the multiple factors courts consider in deciding whether agency delay is unreasonable; he asserts that this court should not undertake such an analysis without the benefit of a full record. This court observes only that at the pleading stage, a court has nothing else before it except the allegations in the pleading, and in this case, that pleading—the *mandamus* petition—alleges almost no facts relating to the reasonableness of the delay. It does not even identify the exact date on which the petitioner filed his U visa petition.

## III. Conclusion

Because the court has determined that the petitioner lacks standing, it will grant the respondents' motion to dismiss. The court will dismiss the case without prejudice, but without leave to amend. See Flynn v. FCA US LLC, 39 F.4th 946, 954 (7th Cir. 2022).

26

The court **GRANTS** the respondents' motion to dismiss. Dkt. No. 7.

The court **ORDERS** that the petition is **DISMISSED** without prejudice and without leave to amend. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of March, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27